Good morning. The first case this morning is 06-3037. Brown v. the Department of Homeland Security. Mr. Branch. Good morning. May it please the court, this is a petition for review of an arbitrator's decision upholding an agency's decision to remove an employee. We have four issues with the arbitrator's decision. Denise Brown was employed as a program manager. This analyst with FEMA for 17 years. She was terminated in September 2004. The first issue that we have with the arbitrator's decision is that there was insufficient evidence to support the arbitrator's decision that Ms. Brown was allowed an opportunity to perform in this job and improve her performance once she was advised that there were deficiencies in her performance. Ms. Brown worked for a political appointee through 2001. She was later transferred to another department in September 2001 and she was in a GS-14 position. Prior to her appointment or transfer to the new department, she received satisfactory to excellent performance appraisals throughout her employment at FEMA. She was later supervised by a gentleman named Brian Cowan. Immediately after Ms. Brown, shortly after Ms. Brown was placed on his supervision in November, by February or January 31st, she was advised that there were deficiencies in her performance. When she arrived in this new division, she was told that she should learn what would be expected from her by checking the agency's website. She was not provided any substantial assistance. The arbitrator mentioned this in his decision that there was a question of whether the agency complied with providing her substantial assistance in improving her performance. And he did not, he mentioned this in his decision, but he did not give Ms. Brown benefit of the doubt in terms of her arguments that she was not allowed to perform or improve her performance in this position. The second issue is that the arbitrator did not correctly interpret Ms. Brown's claims that she was not given credit for work that she performed. One of the issues cited in one of the performance improvement plans was that she had not prepared a PowerPoint presentation. The arbitrator noted in his decision that she, in fact, had prepared this PowerPoint presentation, but the arbitrator decided on his own that even if she had performed this aspect of the work, that it would not have made a difference in the agency's decision. There's precedent in this court which essentially says that neither this court nor the board can determine for the agency whether a claim that's disputed and shown to be false would have changed the agency's decision. The correct way to handle this... At what stage in the game was the PowerPoint presentation done? It was done during one of the performance improvement plans, I believe it was in 2003. And, but the arbitrator decided that even if she prepared this PowerPoint presentation, it would not have made a difference in the agency's decision. It's not for the arbitrator to make that decision. That decision must be made by the agency at the first sentence, so... But the, isn't it the case that Mr. Cowen said that it wouldn't have made a difference? I don't believe he said that in his, in the notice to remove Ms. Brown. I reviewed the notice to remove Ms. Brown again this morning. I did not see it in the notice to remove. He did mention the PowerPoint presentation. The third issue is that there was bias by the... Go ahead. By the removing official of the... Here's the section that I'm referring to. If you look at the red appendix, page 45, the paragraph beginning the word, with the word finally, it's about two-thirds of the way down on red appendix 45. The last sentence, and this is a reference to the PowerPoint, this tasking was complete by the time the current PIP was initiated and was not a factor in my decision that your performance is currently unacceptable. That was the statement that appeared in the notice of failure of performance improvement plan. I do apologize to the court. I did read that paragraph. For some reason, I did focus on that paragraph, but that is in fact what it said there. But this was part of the PIP, and one of the reasons why she was terminated was because she received two consecutive... Well, she was placed on the PIP because she had two quarters where it was determined that she was not fully meeting the requirements for the position. But the PIP continued, and the issue that we have with the continuance of the PIP is that virtually from the time she started, it was determined within a couple of months that she was not meeting some of the critical elements. She continued on the PIPs until she was actually terminated, and our position is that she was not given an opportunity to improve her performance. The next issue was the bias by the deciding official. The deciding official was Mr. Lawrence, Cortez Lawrence, and in October 2003, Mr. Callen, the supervising official, sent an email to Mr. Lawrence basically advising him that I'm continuing Ms. Brown and Ms. PIP. Mr. Lawrence's response was, thank you for your efforts in this difficult work. This is the same individual who became the deciding official and made the decision. Our position is that he was involved in the discipline of Ms. Brown during the course of her, Ms. PIP or during the performance, and therefore someone else should have been designated as the deciding official because he demonstrated some bias, and he demonstrated that he was going to support the position of Mr. Callen by his statements in that October 2003 email. What was it that he said? His exact words were, thanks for your efforts in this tough work. This is at 372 in the joint appendix. That was in response to Mr. Callen's statement that he was going to extend the PIP. That was in October 2003. Why do you think that shows bias? Well, it shows that he was involved in the disciplinary process. He was the supervisor of both of those things. He was Mr. Callen's second level supervisor. It shows that he was going to be supportive of Mr. Callen's decision prior to receiving any information from Ms. Brown. Why do you make that leap from the fact that it's tough work? How do you reach the conclusion that there was bias, that the supervisor was going to back up the person that was supervising the PIP willingly? Ms. Brown, he made this determination without receiving any information from Ms. Brown concerning whether she was performing the job, what she was doing. The determination being that it was a tough job? No, the determination was that he was supporting the performance improvement plan that Ms. Brown was being placed on. Isn't that language susceptible of being understood by the supervisor saying, you know, keep up the good work, this is not easy stuff? Well, Your Honor, I think you have to be… Keep up correctly performing supervising a PIP because it isn't easy, it's hard work. I think it has to be placed in the context of the email from Mr. Callen. He says, as we have discussed, I plan to provide to Denise an unacceptable rating, I've drafted a document, and he continues with his efforts to discipline Ms. Brown. But a determination is made that the supervisor is going to support this decision even before Ms. Brown is given an opportunity to present her point of view. I understood that to be the thrust of how you and your client read that language, but what I was asking was, isn't it reasonably susceptible to a benign interpretation? People know what's going on. I mean, I suppose that in a connection with a second go-through on a PIP where the first one wasn't entirely successful, the agency might think, well, at the end of this road, removal may be a necessary thing, you process some papers. Your Honor, that may be true, but placed in the context of the facts of this case where Ms. Brown, when she arrived in this position, one of the first things she was asked was, how long were your GS-13 before you got this 14? And when she told him she had been in the position a year, the supervisor essentially responded, well, that explains it. I mean, suggesting that somehow, and this was true throughout her employment, her supervisor suggested that she was not competent to perform at this level when in fact she had been promoted to this level. And that's pretty much what the PIP was designed to find out, wasn't it? Whether she was qualified to perform at the 14 level. Well, it would have addressed that issue if she were given an adequate opportunity to meet with her supervisor to have him explain his expectations. Someone new coming into a position and the supervisor says, well, you're a 14, you figure it out, or you're a 14, go look at the website to determine what the expectations are, what my expectations are to you for these particular projects. Even though she had never worked with him before and she had no experience of what his expectations were. She was not given an adequate opportunity to learn the job, to perform the job. This is a 17-year employee with satisfactory to above satisfactory performance appraisals. The fourth issue is the arbitrator would not consider any alternative type of discipline. The agency had available in the regulations, governing regulations, and the arbitrator noted this, they could have transferred her, they could have demoted her. It was already shown that she was. But didn't the arbitrator, he recognized that those were alternative forms of remedy for the failure of the PIP, but he said the agency has the discretion to select from among the available remedies. That is correct. That's true, isn't it? Yes, we're not disputing that, that the agency has the discretion to select, but that shows some type of bias against Ms. Brown where she's performed at the 13 level adequately. You made a determination that she's not performing at the 14 level, but you won't even consider demoting her or transferring her. The easiest option and the option for a transfer is particularly important because when Ms. Brown was given the opportunity to perform for other supervisors, and this was at the end of her employment, she received, she was appraised to receive the highest evaluation. You're into your rebuttal time, why don't we let the government come up with an argument and come back. I deserve that time. Yeah. May it please the Court. Mr. Branch has raised a number of issues this morning that merit a brief response. He stated that Ms. Brown, his client, was not given a reasonable opportunity to improve her performance. The facts of this case are that Ms. Brown moved to the Fire Grants Branch in the fall of 2001. The removal, of course, was in September 2004. In the intervening time, Ms. Brown was put on two performance improvement plans with clearly defined objectives, clearly defined tasks to complete. What we'd ask is that the Court focus on the second performance improvement plan because that is the one after which Ms. Brown was removed. The arbitrator found that Ms. Brown Well, as a matter of fact, was she removed for failure of the second PIP or failure of the first and the second PIP? Your Honor, for failure of the second PIP. And what the focus was in the proposal to remove and also in the actual removal memorandum by the next level supervisor Refresh my recollection. Why was there a second PIP? There was a second PIP, Your Honor, because Ms. Brown did not show improved performance after the first PIP. There was an inter-repeating period of time at the agency Could the agency have proposed her removal after failure of the first PIP? Yes, Your Honor, it could have. But instead, her supervisor chose to give her one other opportunity. Now, the testimony in this case from her supervisor, Mr. Cowen, is that he did that because he saw her removal after such a long period of federal employment to be a very severe adverse action, as we all recognize. And therefore, he gave her another 90-day period, proposed three clearly worded tasks, asked for three products to be produced. And Ms. Brown, at the close of that second 90-day period, with a two-week extension to reply, did not prepare, did not submit any of the three reports. My recollection, unless I'm wrong, is that Ms. Brown felt as if she was entitled to some assistance from the supervisor in helping her to understand precisely what it was she was supposed to accomplish on each of these three points in the second PIP. And it was my understanding that it was the agency's position that, as a 14, she should be smart enough to figure this out herself and didn't need any hand-holding, if you will, or assistance. Is that essentially correct? That is correct, Your Honor. She did make that claim as part of the appeal of her removal. Right. Well, am I correct that the agency's response is, if you're 14, you're supposed to be able to figure it out? Or you don't get assistance in connection with performance of a PIP? Respectfully, Your Honor, I think that's an overstatement. There is some truth to the fact that in her position... Well, let me ask you this hypothetical. Let's assume that a GS-14 is in a PIP and the GS-14 comes to the supervisor and says, I really don't completely understand the nature of this assignment. I think it either calls for preparation of a Document A or a Document B. I'm not exactly sure. And if the agency's response was, well, as a 14, you're supposed to be able to figure that out, we won't answer that question. Would that be appropriate behavior on behalf of the supervisor of a PIP? No, Your Honor. I would not believe that would be appropriate. In this case, there's no evidence that something like that, even close to that, happened. We don't have any requests from Ms. Brown that are in the record that have gone unanswered. We merely have her testimony, unsupported, that she didn't receive assistance. What the arbitrator found in this point, and is on page 39 of his decision, while it appears that Mr. Cowan's supervisory approach with Ms. Brown is not in not giving detailed instructions to her regarding her carrying out her PIP-2 tasks, may be viewed as being something less than fully supportive of Brown achieving her assignments, nevertheless, I find that the tasks were clear and comprehensible, and the assistance given to her by Cowan was sufficiently adequate for the grievant, a GS-14, to have produced some work product. We think that's the key point. If there was no work product that we could look at and say, gee, she wasn't given adequate instructions because she was asked to do X, and here's the product she turned in. So again, there's no evidence to support this claim that she didn't have sufficient instructions. We add, and this is in evidence as well in our supplemental appendix, according to her position description, there is quite a bit of independence expected of a GS-14. And so the arbitrator focuses on that in his ultimate conclusion, that in all the circumstances in this case, I find the agency removal of Denise Brown, a GS-14 program analyst, was supported by substantial evidence. The core of her job as a program analyst was analysis. It seems reasonable. That's what Mr. Cowan was expected, and that was the focus of the tasks that he assigned her as part of the second performance improvement plan, as well as the first plan as well. Again, we think the proper focus here is the second plan. Well, you can focus on it, but the first one can be considered. Yes, it can, Your Honor. As an aggravating factor. It can, Your Honor. And we also note that at least that two of the tasks that Mr. Cowan designed, the second performance improvement plan, are taken from the first performance improvement plan because Ms. Brown didn't submit the products at that time either. And with that, we are— Identical tasks? One, Your Honor, I would say is identical, and that is the analysis and evaluation and some recommendations with respect to the fiscal year 2000 fire grants that Ms. Brown never completed. There's also a larger task, that is Task 3 in the October 2003 PIP, that deals with the subsequent fiscal years that resembles very closely a task from the prior PIP. And that task, Task 3, is the one that Petitioner claims to have submitted a PowerPoint presentation on. There's some evidence that—there's some argument that perhaps the agency failed to consider that Ms. Brown submitted something in response to that second PIP. The evidence is that the PowerPoint presentation Ms. Brown submitted was sometime in November 2002. That is during the first performance improvement period. And Mr. Cowan made some comments on it. This is in evidence. This is in the record. And then returned it to her for completion. And that she then revised that and supposedly submitted it again in November 2002. The second—or, again, we feel the relevant performance improvement period, of course, began in October 2003. And Mr. Cowan asked her for this product. In response to that plan, that performance improvement plan, Ms. Brown submitted nothing. No revised PowerPoint presentation. No PowerPoint presentation at all. So this idea that somehow the agency didn't consider something it should have is mistaken. So was submission of a PowerPoint presentation a required element of the second PIP? Yes, Your Honor, it was. It was. The PowerPoint presentation has been submitted by the petitioner. It's in his—in the joint appendix of his file that actually closes the briefing. And the court can take a look at that and see that, again, the date on this, the memorandum, the cover memorandum is November 2002. Also, we cited in our brief Mr. Cowan's testimony related to that PowerPoint presentation and how he admits he did receive it. That's not in dispute. But again, not during the relevant performance improvement period. And again, it doesn't—given his comments and his request for corrections, it doesn't respond to the analysis that he was asking for. But the court will see if it looks at that PowerPoint presentation, it's simply a recitation of procedures. It's as if I were to ask for the procedures, talk about what the MSPB procedures are, and I were just to say, okay, here's an overview of the statutes and regulations, and I stopped there. There's no analysis. As I said previously, the core of her performance—the core of her position description is analysis of the GS-14. We think the agency was within its rights to expect her to be able to analyze and to hold her to those standards under the circumstances. The arbitrator at the very conclusion of the arbitrator's decision expressed some salutary concern for Ms. Brown, in essence suggesting that the agency should, if it could, seem to find a 12 or 13 position for her. It's not in the record, but is Ms. Brown currently employed? I don't know the answer to that question, Your Honor. As far as I know, she's not employed with the Federal Emergency Management Agency. But in response to those concerns that are stated by the arbitrator, I think Petitioner's counsel has accurately stated there is this discretion on the part of the agency, which adverse action, what it does in response to an employee who has failed to improve his or her performance at the close of the performance improvement period, and the agency's selection of removal was obviously within its discretion. There, again, is no issue here that the agency somehow failed to improperly or improperly failed to devote her to a GS-13 plan. Moreover, we add that there is evidence in the record in the emails that we've submitted in our appendix showing that Mr. Cowan was supportive of her attempts to find a position outside of the FIRE program branch. And, again, this really contradicts this idea from Petitioner that somehow there was bias all along, that somehow the agency was trying to remove her from the get-go. Again, during the period of time that we're talking about here, from the fall of 2001 to September 2004, the steps the agency took in placing her on two performance improvement plans, the fact the agency, her supervisor, was willing to support moving her within the agency, Is there evidence that there were positions that she, I mean, she apparently held a 13 position and did well, right, or did satisfactorily before she came up? That's true, Your Honor. Is there evidence in the record that there were any of those available, or that they considered putting her back, or anything like that? There's evidence in the record that she interviewed for, I believe, two of those positions, but she was not selected for them. I don't know, standing here right now, what point in the process we're talking about, but there were a number of e-mails, there are a number of e-mails that are in the record, where she would let her supervisor know that she was interested in a decision, and he would respond back, and he would support her. So, again, we think the evidence contradicts the assertions that we've heard this morning from Petitioner. The Petitioner has also brought up this issue of bias from, essentially, the director, her supervisor's supervisor, and this comment, thanking her supervisor for his efforts and his tough work. Obviously, we agree that this is not only susceptible to a benign interpretation, but really is only susceptible to a benign interpretation. We all know that this is, in fact, tough work, and we know in this case that that director was called on to not only to approve the ultimate adverse action in this case, but that his action was then reviewed by the Deputy Fire Administrator, the Fire Administrator, and then, of course, the arbitrator. Setting that comment aside, the comment that caught my eye was the other comment that is referred to in the brief. Mr. Bosner, I think, was the union representative. This is at page 21 of the blue brief, testified that in March of 2004, he requested a meeting with Mr. Cowan and Mr. Lerner, and Mr. Lerner said in his testimony of Mr. Bosner, I suppose, is that the agency has made the decision what we're going to do, and there's no point in having meetings at this point. The suggestion is that this is a pre-decisional disposition which forecloses her opportunity to respond. What do you say? Well, Your Honor, I'd like to assume that that, in fact, happened, as Mr. Bosner testified. I guess there's not any contrary evidence from either Lerner or Cowan? I don't believe there is. Right. Okay. So my response is that that second performance improvement period began in October 2003, would have ended at the end of January. Ms. Brown was given a two-week extension, so now we're talking early February 2004, that the performance improvement period ended, and we have in February 5th, 2004, Ms. Brown's response, where she admits she has no of the three products that have been requested of her. And then we have this statement in March 2004, the end of March to be more accurate, and over a month later from the agency, so many human resources, saying that a decision has been made and we're moving forward. Well, under those circumstances, given that chronology, there's nothing improper. We almost think it's a good thing that after the close of the performance improvement period, a month and a half later, the agency has made a decision. To us, that seems somewhat a good thing under the circumstances. Well, you're not suggesting, I take it, that a possible implication of the statement is that this is a foregone conclusion, that she is going to be removed, and there's nothing you can say in response to a proposed notice of removal or whatever that will change our mind. The notice of removal, I guess, doesn't come out until what, June of that year, and that she has a right to respond to that, but the possible implication of the earlier statement says it isn't necessary to bother with responding. This is a done deal, and you say that's not the proper interpretation to put on the statements, and if not, why? You're right. There is no evidence that that is the proper interpretation. I think the susceptible, the interpretation that, again, in our view is completely benign, is that at that time her supervisor had made a decision to propose her for removal, and that memorandum was generated in early June, as Your Honor stated. The decision to remove, of course, after considering Ms. Brown's response, and there was a meeting with her and the union representative, was not made until early September, so she wasn't denied any of her due process, and the evidence is, if the Court looks at the level of detail in the response from her to her response, is that the agency did carefully consider that, the point she raised in response, and for those reasons and others. But you're just saying that the agency doesn't have any legal obligation to meet with Ms. Brown's representatives once they've made the decision to go forward with a notice of removal. When she files a response, that will be time enough to have a meeting. That's correct, Your Honor. All right. Thank you. Mr. Branch. Thank you, Your Honor. Your Honor, our position is that the only interpretation that could be taken from this Bosner statement was that the agency had already determined that they were going to move forward with this removal before Ms. Brown was given an opportunity to either rebut the charges here or to respond adequately. There's simply no other explanation of why the agency would not even consider a transfer of Ms. Brown at this time, or consider any of the other options when they knew she had performed at the 13-level and she was definitely interested in transferring. One of the decisions that was asked by, I believe, Judge Kleffner was Ms. Brown's status at the time. She is not employed in any official capacity with the federal government. In fact, she has sought many positions with FEMA. She's not been employed there. In fact, she worked for a contractor in response to one of the disasters, and when FEMA found out she was working for one of the contractors, they had her removed from the contract. So FEMA has definitely prevented her from returning to any type of work employed with FEMA. How about the government's statement that she did apply for at least two other GS-13 positions that I gather were similar to what she had done successfully before and was supported by her supervisors but was not selected? If that's correct, wouldn't that be a factor in deciding whether it would be appropriate to cast a ballot for a position when she had not been able to secure any during that time? That would be a factor in deciding whether to let her go as opposed to cast a ballot to find one. We have a pretty full record. I have not seen that specifically in the record. She was represented by the government before the arbitrator. But what I will say is that Ms. Brown has made it clear, she made it clear to the agency before she was terminated that she would consider a transfer, she would consider a demotion. She was primarily interested in protecting her 17 years of government service. Well, apparently it's in there. The government cited to some emails to that effect that at least that much is in there. But wouldn't that be a factor that would counsel against spending more time trying to find a position when she has not been able to secure them in the interim period? Your Honor, I would believe so. This is an enormous federal agency, and there are many openings, many vacant positions in this agency. Ms. Brown did not limit the reduction in grade to a 13. She indicated that she would accept any position. She just did not want to lose her position after so many years of service. The issue, the government also raised the issue that with the PowerPoint presentation, there was no analysis performed by Ms. Brown. Although that's disputed, that's one of the main concerns that Ms. Brown had about the supervision, had with the supervision of Mr. Cowan. When she went to him and said, what are you asking for, Brian or Mr. Cowan? Tell me specifically what you're looking for so that I can complete this task. She was not given any direction from Mr. Cowan on what he specifically wanted. He basically placed her in a position very early on of figure it out on your own or you're going to be removed from your position. He made it clear very early in her tenure with him that he was going to place her on a performance improvement plan and continue on this course until it was removed because he determined that fairly early on that she was not qualified for this position. Somehow she obtained this position because she worked or this promotion to a 14 because she worked for a prior political appointee. Thank you. Thank you.